**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| GERALD DELOSS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CORPORATION, COMCAST HOLDINGS CORPORATION, COMCAST CABLE COMMUNICATIONS, INC. and COMCAST CABLE COMMUNICATIONS HOLDINGS, INC.<br><br>Defendants. | CIVIL ACTION NO.:<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, Gerald DeLoss (hereinafter referred to as "Plaintiff"), individually and as a representative of the putative class described below, by and through his undersigned attorneys, brings this Class Action Complaint against Comcast Corporation, Comcast Holdings Corporation, Comcast Cable Communications, Inc. and Comcast Cable Communications Holdings, Inc. (hereinafter referred to as "Comcast" or "Defendants"). In support thereof, Plaintiff avers the following:

## INTRODUCTION

1. This class action is brought on behalf of Plaintiff and all similarly situated persons who purchase premium and/or digital cable services from Comcast in the United States of America.

2. Comcast's premium and/or digital cable customers have no choice but to

pay a rental fee for a "cable box" or "set-top box" in order to view cable, for which they pay a separate fee. Comcast's actions constitute an unlawful tying arrangement resulting in an impermissible restraint of trade, in violation of federal law.

3. The activities of Comcast have and will continue to threaten and have substantial adverse competitive effects upon both interstate commerce and upon commerce within the State of Minnesota.

## THE PARTIES

4. At all relevant times, Plaintiff was a citizen of the State of Minnesota.

5. At all relevant times, Plaintiff is and has been a subscriber of premium and/or digital cable television services provided by Comcast for a number of years. He is a member of the class defined herein.

6. At all relevant times, Plaintiff has paid and pays Comcast monthly rental fees for his set-top box.

7. Plaintiff brings this class action on behalf of himself and on behalf of the following class of persons (hereinafter referred to as "putative class" or "Class"):

> All persons who subscribed to Comcast for premium and/or digital cable television services and subscribe or paid/pay a monthly rental fee for an accompanying set-top box.
>
> Excluded from the Class are Comcast; officers, directors or employees of Comcast; any entity in which Comcast has a controlling interest; the affiliates, legal representatives, attorneys, heirs, assigns of Comcast; any federal, state or local governmental entity, and any judge, justice, or judicial office presiding over this matter and the members of their immediate families and judicial staffs.

8. Defendant Comcast Corporation is a publicly held Pennsylvania Corporation with its principle place of business located at One Comcast Center, Philadelphia, Pennsylvania.

9. Defendant Comcast Holdings Corporation is a Pennsylvania corporation with its principle place of business located at One Comcast Center, Philadelphia, Pennsylvania. It is believed, and therefore averred, that Comcast Holdings Corporation was, at all times relevant hereto, a wholly owned subsidiary of Comcast Corporation.

10. Defendant Comcast Cable Communications, Inc. is a Delaware corporation with its principle place of business located at One Comcast Center, Philadelphia, Pennsylvania. It is believed, and therefore averred, that Comcast Cable Communications, Inc. was, at all times relevant hereto, a wholly owned subsidiary of Comcast Corporation.

11. Defendant Comcast Cable Communications Holdings, Inc. is a Delaware corporation with its principle place of business located at One Comcast Center, Philadelphia, Pennsylvania. It is believed, and therefore averred, that Comcast Cable Communications Holdings, Inc. was, at all times relevant hereto, a wholly owned subsidiary of Comcast Corporation.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action involves claims arising under federal law. Specifically, Plaintiff, on behalf of himself and putative class members, is asserting claims under the Sherman Anti-Trust Act (15 U.S.C. § 1).

13. Venue is proper in this Court under 28 U.S.C. § 1391 because a significant portion of the events, acts and omissions giving rise to this action occurred in the State of Minnesota and because the Plaintiff is a resident of this District.

## CLASS ACTION ALLEGATIONS

14. Comcast has a monopoly in areas in which it provides cable television services to persons located in each of the states in which Comcast provides cable service, or otherwise has sufficient market power to appreciably restrain free competition. Plaintiff, and all other Comcast cable television subscribers in the states in which Comcast provides cable services, have no choice but to participate in this restrained market place for cable television services.

15. Plaintiff, therefore, brings this class action lawsuit on behalf of himself and the Class pursuant to Federal Rules of Civil Procedure 23(b)(1), 23(b)(2) and 23(b)(3).

16. The requirements of Federal Rule 23, including numerosity, typicality, adequacy, commonality, predominance and/or superiority, are satisfied.

## NUMEROSITY

17. Upon information and belief, the members of the proposed Class are so numerous that joinder of all members is impracticable. The proposed Class includes thousands of members. The precise number of members of the Class can readily be ascertained through discovery, which will include Defendants' sales and other records.

## TYPICALITY

18. The representative Plaintiff's claims are typical of the claims of the

members of the Class. Plaintiff and all Class members have been injured by the same wrongful practices engaged in by Defendants. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

**ADEQUACY**

19. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained class counsel who are experienced and qualified in prosecuting class actions and antitrust class actions. Neither Plaintiff, nor his attorneys have any interests which are contrary to or conflicting with the Class.

**COMMONALITY/PREDOMINANCE**

20. There is a well-defined community of interest and common questions of law and fact which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from one Class member to another, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to the following:

a. Whether Comcast is liable to the Plaintiff and the Class for violations of federal antitrust laws;

b. Whether Comcast has established illegal tying arrangements for the rental of cable boxes, in violation of federal law;

c. Whether Comcast's actions caused injury to Plaintiff and the Class and whether Comcast should be enjoined from further violations; and

d. Whether Comcast is liable to Plaintiff and the Class for treble damages for its violation of federal antitrust laws.

**SUPERIORITY**

21. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are believed to be in the millions of dollars, the individual damages incurred by each Class member resulting from Defendants' wrongful conduct are too small to justify the expense of individual claims, particularly given the complexity of these claims. Therefore, a class action is the only reasonable means by which the Plaintiff and the Class may pursue their claims. Moreover, the likelihood of individual Class members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be substantially and unduly burdened by the individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper. Defendants

have acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

## FACTUAL ALLEGATIONS

22. Comcast is the largest cable operator in the United States and offers a variety of entertainment and communications products and services. Comcast serves over 24.6 million customers with its cable products.

23. Comcast provides cable-based services, including cable television, high-speed internet and telephone, to customers in 39 states and the District of Columbia. Further, on information and belief, Comcast has more than 50% share of the cable television market in the United States.

24. Comcast was incorporated under the laws of Pennsylvania in 2001. Through itself and its predecessors, Comcast has developed, managed and operated cable systems since 1963.

25. Comcast classifies its operations in two reportable segments: Cable and Programming. Comcast's Cable segment, which generates approximately 95% of its consolidated revenues, manages and operates its cable systems, including video, high-speed internet and telephone services, as well as its regional sports and news networks. Comcast's Programming segment consists primarily of its consolidated national programming networks, including E!, the Golf Channel, VERSUS, G4 and Style.

26. Customers who subscribe to Comcast's premium and/or digital cable

services, the Class, pay a monthly fee for those cable services.

27. Members of the Class elect to receive digital cable and/or premium channels, including, but not limited to, HBO, Showtime, Cinemax, The Movie Channel and Starz, and other specialty channels.

28. In addition to paying a fee for cable, customers that pay for digital cable and/or premium channels must also pay a rental fee to Comcast for a cable or set-top box if they wish to have more than one set-top cable box in their home. The set-top-box consists of a converter box and cable descrambler. On information and belief, the set-top box is required to view the digital cable and premium channels, therefore, digital cable and premium channels can only be viewed by Comcast customers if the customers also have a set-top box.

29. Comcast's conduct in forcing Plaintiff and members of the Class to rent the set-top cable box from Comcast is in direct violation of Comcast's own published policy, which states:

> *If you plan to purchase cable services that we scramble or encrypt, such as premium, pay-per-view or digital services, you should make sure that any set-top converter, or navigation device or digital-cable-ready television...that you purchase from a retail outlet is compatible with our system . . . Upon your request, we will provide you with the necessary technical parameters necessary for any set-top converter rented or acquired from retail outlets to operate with our cable system.*

30. Upon information and belief, Comcast, through its representatives, agents, servants and/or employees states, communicates and/or otherwise represents to its customers via the internet, over the phone or through other methods of communication

that rental of Comcast cable boxes is necessary to receive Comcast's premium channels and/or digital cable services, in direct violation of Comcast's own written policy.

31. Upon information and belief, Comcast, through its representatives, agents, servants and/or employees states, communicates and/or otherwise represents to its customers via the internet, over the phone or through other methods of communication that Comcast customers cannot use set-top cable boxes purchased or rented from retail sources on the market, in direct violation of Comcast's own written policy.

32. Upon information and belief, when Comcast customers contact Comcast, the customers are instructed, by Comcast's representatives, agents, servants and/or employees that they must rent set-top cable boxes from Comcast in order to receive Comcast's premium channels and/or digital cable services.

33. Upon information and belief, when Comcast customers contact Comcast, the customers are instructed, by Comcast's representatives, agents, servants and/or employees that they cannot use set-top cable boxes purchased or rented from retail outlets to view Comcast's premium channels and/or digital cable services.

34. Comcast requires, forces and/or coerces members of the Class, who wish to have more than one cable box, to rent the cable box directly from it and no other source, even though cable boxes are available on the open market that would readily permit members of the Class to view the digital cable and/or premium channels offered by Comcast. Thus, Comcast ties its digital cable and premium channel cable service with the cable box that it requires, forces and/or coerces Class members to rent, even though

the digital cable service/premium channel cable service and the set-top box are separate and distinct products.

35. Although cable boxes are manufactured by a number of different companies and entities, on information and belief, the national market is dominated by Scientific Atlanta and Motorola, companies that provide cable boxes to Comcast and a small group of other cable providers. If Comcast did not tie its digital and/or premium cable service with its cable box, Plaintiff and members of the Class could purchase a cable box from a manufacturer of their choice and use it to view the digital and/or premium cable channels (for a cost) provided by Comcast.

36. Plaintiff's and the Class' choice to use cable boxes other than those rented by Comcast; however, is not available as a result of Comcast's conduct and practice of tying its digital and/or premium channel cable service with the cable box. By its conduct, Comcast forces and/or coerces Plaintiff and members of the Class to pay a significantly larger sum of money than would be required if the two distinct products (digital/premium cable service and cable box) were not tied. In just a matter of months, the rental fees that the Plaintiff and members of the Class are forced and/or coerced to pay for the cable boxes supplied by Comcast greatly exceed their worth.

37. Upon information and belief, Comcast provides one free set-top cable box to its customers, but then charges for each additional cable box, High-Definition capable set-top cable box, and/or High-Definition capable set-top cable box with DVR functioning.

38. Upon information and belief, Comcast is purchasing cable boxes at a fixed and low cost from certain manufacturers, such as Scientific Atlanta and Motorola, only to turn around and rent the very same boxes to the Class, with full knowledge that the Plaintiff and members of the Class, as a result of Comcast's conduct, have no choice but to pay the rental fees charged by Comcast. Upon information and belief, the market for cable boxes involves a significant and substantial amount of interstate commerce.

39. The impropriety of tying cable service to rental of a cable box has been investigated by the Federal Communications Commission (hereinafter referred to as "FCC"), which has long recognized the lack of competition in the cable industry, resulting from monopolistic policies of cable companies. As such, the FCC adopted a regulation requiring the cable industry to separate the descrambling and other security capabilities of a cable box and place the capabilities in a separate device, which is called a CableCARD.

40. A CableCARD is a credit-card sized device which performs the same descrambling and security functions of a set-top cable box. Comcast, and all other cable operations, are required by the FCC to make CableCARD devices available to consumers.

41. Despite FCC rules, regulations and/or guidelines, Comcast still promotes the set-top cable box as superior to the just recently available CableCARD. Comcast's website proclaims:

> *CableCARD™ is a small one-way Digital Cable decoder that is the size of a credit card, and fits inside an expansion port built into*

> *newer televisions. It allows for basic viewing of digital channels without a digital set-top box.* ***However, the CableCARD is unable to take advantage of the many great interactive services Comcast provides, such as On Demand and Pay-Per-View.*** *It's an option for customers that do not want external cable equipment.*
>
> *The CableCARD is a piece of equipment that the customer rents from Comcast, just like a digital set-top box (It is available by calling 888-824-8264. However, if you would like to take advantage of the many great interactive services Comcast offers,* ***we recommend renting a digital set-top box instead.***

(http://www.comcast.com/customers/faq/FaqDetails.ashx?ID=2540&fss=cable%20card)

42. In addition to all of these representations, customers must lease the device from Comcast, just as they are required to lease the set-top box.

43. Comcast's actions allow it to unfairly utilize its market power and/or monopoly in the State of Minnesota, bringing harm to Plaintiff and members of the Class.

## COUNT I
## VIOLATION OF THE SHERMAN ANTI-TRUST ACT- UNLAWFUL TYING

44. Plaintiff repeats each and every preceding and subsequent allegation with the same force and effect as if set forth fully herein.

45. Section 1 of the Sherman Anti-Trust Act states, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." (15 U.S.C. § 1). Therefore, it is unlawful to enter into a contract in restraint of trade or inter-state commerce.

46. Section 15 of the Sherman Anti-Trust Act states, "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws

may sue therefore in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." (15 U.S.C. § 15). Therefore, Congress has created a private right of action for persons injured by a violation of the Sherman Anti-Trust Act.

47. Plaintiff, on behalf of himself and the members of the Class, seeks redress for Comcast's violation of Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1.

48. Comcast improperly ties and bundles its digital and/or premium cable service with the necessary rental of a set-top cable box. Specifically and as explained above, Comcast contracted with the Plaintiff and members of the Class to provide cable services but only on the condition that the Plaintiff and members of the Class also rent a set-top cable box from Comcast.

49. As a result, Plaintiff and members of the Class cannot unbundle the illegally tied products of the digital and/or premium cable service and the cable box.

50. Instead, Plaintiff and members of the Class are forced to pay rental fees for the cable box, in addition to fees for cable service. Comcast's conduct is particularly egregious, given it is one of the largest cable service providers in the State of Minnesota and the United States as a whole.

51. Comcast has, at all relevant times, maintained sufficient economic power in the cable provider market to coerce and/or force Plaintiff and members of the Class to

lease and/or accept the tied product (the cable box) with the digital and/or premium cable service.

52. Comcast's improper tying and bundling harms competition. Upon information and belief, just two manufacturers of cable boxes dominate the industry and they provide most of their products to Comcast and a small group of other cable service providers. Since the Plaintiff and members of the Class can only lease cable boxes directly from Comcast, there is little motivation for other manufacturers to enter the market, and those that do are foreclosed from renting and/or selling cable boxes directly to Plaintiff and members of the Class at a lower, market-driven cost.

53. There is a market for cable boxes that is separate and apart from the market for Comcast cable services. These items, cable service and cable boxes, are distinct and separate items.

54. Comcast has, at all times relevant to this action, maintained sufficient economic power in the cable market to force and/or coerce Plaintiff and members of the Class to lease and/or otherwise accept the tied product, the cable box, that they would not otherwise lease or accept from Comcast. This economic power will continue absent the relief sought herein.

55. Comcast's conduct at issue involves a substantial amount of interstate commerce in the market for cable boxes and related markets.

56. Comcast's inappropriate tying and bundling of its cable service and cable boxes constitutes an unreasonable restraint of trade that is unlawful under Section 1 of the

Sherman Anti-Trust Act, 15 U.S.C. § 1.

57. Comcast's inappropriate tying and bundling of its cable services and cable boxes have an adverse impact upon cable consumers and competition.

58. There is no lawful business justification for Comcast's actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, prays for a judgment against Comcast Defendants, as follows:

a. For an Order Certifying the Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as representatives of the Class and appointing the law firm representing Plaintiff as counsel for the Class;

b. For an Order that Comcast has violated Section 1 of the Sherman Anti-Trust Act;

c. For all recoverable compensatory and other damages sustained by Plaintiff and members of the Class;

d. For all statutory damages available under the claims asserted;

e. For payment of costs of suit occurred herein;

f. For both pre-judgment and post-judgment interest on any amounts awarded;

g. For payment of reasonable attorney's fees as may be allowable under applicable law;

h. For such other and further relief as the Court may deem to be proper.

**JURY DEMAND**

Plaintiff hereby demands a jury trial on all triable issues of fact.

Dated: July 29, 2009

Respectfully submitted,

s/Daniel E. Gustafson

Daniel E. Gustafson (#202241)
Karla M. Gluek (#238399)
James W. Anderson (#337754)
**Gustafson Gluek PLLC**
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone: (612) 333-8844
Fax: (612) 339-6622
Email: dgustafson@gustafsongluek.com
kgluek@gustafsongluek.com
janderson@gustafsongluek.com

***Attorneys for Plaintiff***